# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARTHA MITCHELL | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 17-1806 |
| ALLSTATE INSURANCE COMPANY | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                        **March 29, 2019**

A homeowner claiming her insurer acted in bad faith by failing to pay on a claim for water damage caused by cracked pipes must show clear and convincing evidence of the insurer lacked a reasonable basis for denying coverage and knew and recklessly disregarded its lack of a reasonable basis. When, after discovery, the entirety of the evidence shows the insurer repeatedly followed up on several repeated attempts to show property damage arising months after a lightning strike, but the homeowner could not show a nexus between cracking and rupture in her older water pipes and the lightning strike, we grant the insurer's motion for summary judgment on the remaining bad faith claim. The homeowner has not met her burden of showing the required level of bad faith by clear and convincing evidence.

## I. Undisputed facts.

Martha Mitchell purchased a home insurance policy from Allstate Insurance Company.[1] On May 23, 2014, lightning struck a tree in her backyard.[2] Ms. Mitchell opened a property damage claim.[3] Allstate adjuster Richard Cox contacted Ms. Mitchell soon after she opened the claim.[4] Ms. Mitchell explained the lightning struck a large tree in her backyard but her home had not been damaged.[5] Mr. Cox told Ms. Mitchell her policy provided coverage for damage to trees up to

$500.00.[6] On June 5, 2014, Allstate issued Ms. Mitchell a $500.00 check for the tree damage and closed the claim.[7]

### *Ms. Mitchell opens a new claim for damage from a July 2014 hail storm.*

On October 20, 2014, Ms. Mitchell opened a new claim concerning a July 8, 2014 hail storm damaging her roof and resulting in a leak.[8] An Allstate representative visited Ms. Mitchell's property one week later to inspect the damage to her roof.[9] The representative estimated $8,811.56 in replacement cost value, without applying $2,056.35 in depreciation and the $500.00 policy deductible.[10] On October 28, 2014, Allstate tendered a $6,255.21 check to Ms. Mitchell.[11] On December 26, 2014, after Ms. Mitchell provided an invoice for roofing work done on her home,[12] Allstate issued a $1,700.75 supplemental payment for recoverable depreciation on the hail claim.[13]

### *Ms. Mitchell then claims the tree harmed by the lightning strike caused pipe damage.*

On January 19, 2015, Ms. Mitchell contacted Allstate regarding her initial claim for tree damage almost eight months before.[14] In speaking with her hail claim adjuster, Justin Melton, Ms. Mitchell asserted part of the tree struck by lightning on May 23, 2014 fell on her home causing a leak resulting in increased water and sewer costs.[15] Mr. Melton advised Ms. Mitchell to have a contractor provide a damages report and estimate, and to gather her water and sewer bills from the last year.[16]

Over the following month, Ms. Mitchell communicated with Mr. Melton and another Allstate representative on several times.[17] Allstate's claim file reflects on January 20, 2015, Ms. Mitchell reported she had "been pulling up concrete slab in sections looking for water source."[18] On February 16, 2015, Allstate notes Ms. Mitchell advised of more damage to pipes underneath her home, which she attributed to the tree falling on her home.[19] On February 17, 2015, after receiving the requested documentation, Allstate's Melton contacted Ms. Mitchell.[20] Ms. Mitchell

2

explained how she did not think the tree damaged the property when it fell but now believed it damaged the pipes.[21] Allstate's Melton advised Ms. Mitchell to proceed with the adjuster for her May 2014 lightning claim, Mr. Cox, since the damage related to the May 23, 2014 lightning rather than the July 8, 2014 hail storm.[22] He informed Mr. Cox of the situation and closed the hail claim.[23]

### *Mr. Cox investigates the pipe damage claim.*

Mr. Cox contacted Ms. Mitchell's plumbing contractor the next day to gather information on the cause of the leak—but without success because the plumber who reviewed the issue was busy at a job.[24] The parties deposed the plumber regarding his January 7, 2015 visit to Ms. Mitchell's home.[25] He testified to informing Ms. Mitchell the water leak occurred due to the "sheer wear and tear" of the pipes.[26] The plumber recalled Ms. Mitchell being adamant about the fallen tree causing the leak but did not agree because the copper pipes were incased in concrete.[27]

Mr. Cox followed up with Ms. Mitchell and informed her of his efforts.[28] Mr. Cox had reviewed the documents and information she provided but nothing in the materials mentioned a cause of the leak.[29] Ms. Mitchell apparently became frustrated over the effort required of her to prove a loss, to which Mr. Cox referenced her insurance policy which requires her to prove damage to property.[30] Ms. Mitchell claimed the adjuster had been of no help and "made threats" of telling the media how poorly she had been treated.[31]

Allstate paid Ms. Mitchell the policy limit for tree damage in her lightning claim and also paid to replace the roof in full in her hail claim.[32] Mr. Cox explained Ms. Mitchell Allstate does not perform exploratory inspections, "once the problem has been located and a cause of loss has been identified we then would determine if it is covered loss and if it is we would estimate the damages."[33]

3

On March 2, 2015, Ms. Mitchell contacted another Allstate representative, again requesting Allstate to visit the property and locate the damaged pipe.[34] The representative advised Ms. Mitchell to contact her contractor to find out what caused the leak, and Mr. Cox would follow up with both her and her most recent contractor.[35]

On March 17, 2015, Mr. Cox spoke with Ms. Mitchell's heating contractor regarding damage to the boiler unit.[36] The contractor opined the unit to be "at least 40 to 50 years old" and its age could have been a reason for the issues, but he had no idea what caused the damage.[37] In a subsequent deposition, the contractor swore Ms. Mitchell told him the fallen tree caused the pipe issues. He disagreed.[38] Mr. Cox contacted the heating contractor on the same day he informed Ms. Mitchell of the conversation.[39] Based on the contractor's opinion and review of the estimate, Mr. Cox explained, he could not "tie the damage to her boiler or furnace to any open claims."[40] Ms. Mitchell would need to find someone who could determine actual damage and its cause to proceed with her claim.[41] Mr. Cox closed the claim.

### *Other Allstate representatives inspect the pipe damage.*

Ms. Mitchell continued to contact various Allstate offices about the water leakage. On April 29, 2015, following an inspection of Ms. Mitchell's property, Allstate "field support" reported to Mr. Cox "there is no way we can tie in this loss with the tree."[42] The representative opined the issue necessitated digging under the concrete which could only be done with an expert diagnosis.[43] They advised Ms. Mitchell to have a plumber provide a report and she would need to open a new claim.[44] Ms. Mitchell did not submit a report to Allstate or open a new claim.

### *Ms. Mitchell sues Allstate.*

On March 21, 2017, Ms. Mitchell sued Allstate in state court.[45] Allstate timely removed the matter to this court.[46] On May 19, 2017, Allstate moved for judgment on the pleadings.[47] Rather

4

than respond to Allstate's motion, Ms. Mitchell requested leave to amend her complaint to sue Allstate for violating Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law.[48] On October 15, 2018, with Ms. Mitchell having entered her appearance *pro se*,[49] we held oral argument on both parties' motions.[50] We found the contractual suit limitation clause in Ms. Mitchell's insurance policy time-barred her breach of contract claim, Ms. Mitchell failed to adequately plead her bad faith claim and, as a matter of state law, she could not plead a claim for breach of fiduciary duty or under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[51] We granted Allstate's motion for judgment on the pleadings but allowed Ms. Mitchell leave to amend her complaint to plead specific facts limited to her bad faith claim.[52]

On October 30, 2018, Ms. Mitchell filed a document entitled "Contract Amendment."[53] Construing it as an amended complaint, we dismissed it without prejudice to permit Ms. Mitchell to file a second amended complaint identifying each defendant and her claims against each defendant.[54] We struck Ms. Mitchell's second amended complaint[55] for being incomprehensible and once more permitted her to file an amended complaint consistent with Rule 8 of our Federal Rules of Civil Procedure.[56] We construed Ms. Mitchell's December 3, 2018 "Affidavit"[57] as her third amended complaint.[58]

Upon Allstate's motion,[59] we dismissed Ms. Mitchell's claims under the Unfair Trade Practices and Consumer Protection law, Title VII of the Civil Rights Act of 1964, Unfair Insurance Practices Act and/or Unfair Claims Settlement Practices Regulations.[60] Only Ms. Mitchell's bad faith claim against Allstate remained.[61]

Allstate now moves for summary judgment.[62] Ms. Mitchell attempted to *pro se* move for summary judgment[63] which we denied without prejudice for her to respond to the pending

5

motion.[64] Ms. Mitchell renewed her motion[65] and we again denied but ordered it to be treated as an untimely response to Allstate's motion for summary judgment.[66]

II.  **Analysis**

Ms. Mitchell alleges bad faith against Allstate because it refused or failed to properly evaluate and make payment on her claim for pipe damage allegedly arising from the May 23, 2014 lightning.[67]

To prevail in her bad faith claim, Ms. Mitchell must prove through clear and convincing evidence Allstate (1) lacked a reasonable basis for denying coverage; and (2) knew or recklessly disregarded its lack of a reasonable basis.[68] Pennsylvania courts interpret bad faith as "any frivolous or unfounded refusal to pay proceeds of a policy."[69] Ms. Mitchell may also assert bad faith based on Allstate's investigative practices, "such as a lack of good faith investigation into facts, and failure to communicate."[70] But to proceed to trial, she now needs to show clear and convincing evidence. Allstate's conduct must be more than mere negligence or bad judgment to constitute bad faith.[71] Allstate can defeat the bad faith claim with evidence it had a "reasonable basis for its actions."[72]

Ms. Mitchell fails to establish bad faith through clear and convincing evidence. The undisputed evidence shows Mr. Cox along with a multitude of other Allstate representatives acted to process both of Ms. Mitchell's claims in a timely and reasonable manner. Allstate processed her first claim and tendered the $500.00 policy limit within two weeks of it being opened. In her second claim, Allstate made two payments to Ms. Mitchell in full for the cost of her roof.

We reject Ms. Mitchell's bad faith assertion based on Allstate's refusal to issue payment for the damaged pipes. Ms. Mitchell had a contractual obligation to show property damage. She failed to do so. Ms. Mitchell failed to provide photographs of the fallen tree on her roof—a fact

6

she did not assert until eight months after opening the claim. And the pipes were encased in concrete so Ms. Mitchell could not simply forward photographs of the pipes to link the damage to the fallen tree. She had to retain a contractor to provide a report making the connection. Yet Ms. Mitchell's plumbing and heating contractors both testified the fallen tree did not cause the pipe damage, rather, the pipes needed to be replaced because of their age. We cannot expect Allstate to make payments on claims devoid of some evidence linking damage to an event.

For similar reasons we also reject Ms. Mitchell's bad faith assertion based on Allstate's failure to properly evaluate her pipe damage claim. Allstate's voluminous Claim File Pages for Ms. Mitchell's claims reflect Allstate employees serviced her pipe damage concerns in an identical manner they serviced her other claims. Communications occurred most often between Ms. Mitchell and Mr. Cox, but when Ms. Mitchell spoke with other Allstate representatives, they assisted in the same way. Ms. Mitchell had the obligation to prove her damage. Mr. Cox reviewed documents and information she provided. Mr. Cox contacted Ms. Mitchell's plumbing and heating contractors to further his investigation. And two Allstate representatives inspected Ms. Mitchell's property regarding the pipe damage claim. We find Allstate had a reasonable basis for its actions.

Ms. Mitchell completely fails to show evidence, let alone clear and convincing evidence, of her insurer acting in bad faith in evaluating her claim of water and pipe damage arising from a lightning strike under Pennsylvania law.

### III. Conclusion

Ms. Mitchell fails to adduce evidence showing Allstate refused or failed to properly evaluate and make payment on her claim for pipe damage. We grant Allstate's motion for summary judgment on Ms. Mitchell's remaining claim for bad faith.

¹ *See* ECF Doc. No. 58 at MSJ App 0169-0224. We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" Ms. Mitchell, "the party opposing the motion." *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004). Our Policies require a Statement of Undisputed Material Facts and an Appendix of exhibits in support of summary judgment. Allstate submitted its Statement of Undisputed Material Facts (ECF Doc. No. 59) and Appendix (ECF Doc. No. 58 "MSJ App"). Ms. Mitchell did not submit a Statement of Undisputed Facts. Ms. Mitchell did submit an untitled document (ECF Doc. No. 72) comprised of miscellaneous materials and exhibits totaling over four hundred pages of similar miscellaneous materials, which appear to be altered photocopies of previous filings in this matter. We liberally construe Ms. Mitchell's *pro se* filing as an Appendix though it is not "Bates stamped" and has no table of contents consistent with our October 15, 2018 Scheduling Order (ECF Doc. No. 39).

² ECF Doc. No. 1 at 8.

³ *Id.;* ECF Doc. No. 58 at MSJ App 0225-0230.

⁴ ECF Doc. No. 58 at MSJ App 0232.

⁵ *Id.*

⁶ *Id.* The insurance policy provides for the removal and replacement of damaged trees: "We will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under Coverage A – Dwelling Protection for loss to trees, shrubs, plants and lawns at the address of the residence premises. We will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the residence premises, vandalism or malicious mischief, theft or collapse of a building structure or any part of a building structure." ECF Doc. No. 58 at MSJ App 0207-08.

⁷ ECF Doc. No. 1 at 8; *See* ECF Doc. No. 58-11.

⁸ *Id.* at MSJ App 0250-55.

⁹ *Id.* at MSJ App 0256-71.

¹⁰ *Id.* at MSJ App 0278.

¹¹ *Id.* at MSJ App 0283.

¹² *Id.* at MSJ App 0285.

¹³ *Id.* at MSJ App 0287.

¹⁴ *Id.* at MSJ App 0268-69.

[15] *Id.*

[16] *Id.*

[17] *Id.* at MSJ App 0268-71.

[18] *Id.* at MSJ App 0269.

[19] *Id.* at MSJ App 0270.

[20] *Id.* at MSJ App 0270-71.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at MSJ App 0234.

[25] *Id.* at MSJ App 0288-94.

[26] *Id.* at MSJ App 0292-93.

[27] *Id.*

[28] *Id.* at MSJ App 0235.

[29] *Id.*

[30] *Id.* As provided in the policy, "in the event of a loss to any property that may be covered by this policy, you, must…as often as we reasonably require: 1) show us the damaged property." ECF Doc. No. 58 at MSJ App 0208-0209.

[31] ECF Doc. No. 58 at MSJ App 0235.

[32] *Id.*

[33] *Id.*

[34] *Id.* at MSJ App 0236.

[35] *Id.*

[36] *Id.* at MSJ App 0238.

[37] *Id.* at MSJ App 0237-38.

[38] *Id.* at MSJ App 0295-99.

[39] *Id.* at MSJ App 0238.

[40] *Id.*

[41] *Id.*

[42] *Id.* at MSJ App 0239-40.

[43] *Id.*

[44] *Id.*

[45] ECF Doc. No. 1 at ¶ 2; *see* ECF Doc. No. 1 at 5-12. Ms. Mitchell asserted claims for bad faith, breach of contract and breach of fiduciary duty. ECF Doc. No. 1 at 4-12. Ms. Mitchell alleged she opened a claim in May 2014 after lightning struck a tree on her property and part of it "crashed onto her roof." ECF Doc. No. 1 at 8. The adjuster advised Ms. Mitchell due to widespread damages throughout the area he could not personally come to inspect her property and she needed to provide photographs of the damage. *Id.* Ms. Mitchell "repeatedly requested" Mr. Cox to visit her property to assess the damages but no Allstate representative came. *Id.* On June 5, 2014, Allstate tendered payment of "$500.00 only for the tree damage." *Id.* Ms. Mitchell alleged "[a]fter the storm" she discovered a leak in her roof and "immediately" contacted Allstate. *Id.* Ms. Mitchell did not specify she was referring to, the date it occurred or the date she contacted Allstate about the leak in her roof. Ms. Mitchell did not mention in her complaint the July 8, 2014 hail storm. Ms. Mitchell did allege on December 26, 2014 she received payment of $1,700.75 for the damage to her roof. *Id.* She did not acknowledge Allstate's October 28, 2014 payment of $6,255.21. Ms. Mitchell claimed over the following eight months her water and heating costs increased despite no change in usage. *Id.* at 9. She employed a third party, UGI Heating, Cooling and Plumbing ("UGI") to assess the problem. *Id.* UGI "determined that a pipe in the bathroom and the pipes to the boiler had been damaged," to the extent it necessitated turning off the boiler, leaving Ms. Mitchell without heat in her home. *Id.* UGI informed Ms. Mitchell "to replace the pipes and fix the heating system a contractor would need to break through the foundation of the home." *Id.*

[46] *See* ECF Doc. No. 1.

[47] ECF Doc. No. 7.

[48] *See* ECF Doc. No. 11.

[49] *See* ECF Doc. No. 26.

⁵⁰ We also heard argument on Allstate's response to Ms. Mitchell's motion to amend (ECF Doc. No. 12), Allstate's motion for summary judgment (ECF Doc. No. 21) and Ms. Mitchell's response (ECF Doc. No. 33), and Allstate's motion for joinder (ECF Doc. No. 29). *See* ECF Doc. No. 37.

⁵¹ ECF Doc. No. 37.

⁵² *Id.*

⁵³ ECF Doc. No. 43.

⁵⁴ ECF Doc. No. 44.

⁵⁵ ECF Doc. No. 46.

⁵⁶ ECF Doc. No. 47.

⁵⁷ ECF Doc. No. 48.

⁵⁸ ECF Doc. No. 50. Similar to her original complaint, Ms. Mitchell alleged she had opened a claim with Allstate after lightning struck her tree and part of it crashed onto her roof. ECF Doc. No. 48 at 2. Mr. Mitchell alleged Mr. Cox advised her of his busy but did not state she had been instructed to provide pictures for an estimate. Id. However, she claimed after waiting four months for Mr. Cox to come inspect her home, she "gave up and decided to move the tree from the front yard and moved it to the back of the house." Id. Ms. Mitchell alleged upon removal of her tree, she received a check for $500.00. Id. Then Ms. Mitchell heard a dripping sound in her walls, and she contacted Allstate again. Allstate "quickly acted" on her request, came to assess the damage and issued payment of $7,000.00 to Ms. Mitchell for roof repairs. Ms. Mitchell alleged she later received another payment of $1,700.00 for the remaining cost of the roof. The allegations differed from Ms. Mitchell's previous claims (See ECF Doc. No. 1 at 5-12) as well as the timeline Allstate established through its Claim File Pages (See ECF Doc. No. 58 at MSJ App 0232-40) and check receipts (See ECF Doc. No. 58 at MSJ App 0249, 0283, 0287). Issues only persisted for Ms. Mitchell. Eight months later, after every pipe in the house had allegedly leaked, she contacted Mr. Cox. ECF Doc. No. 48 at 4. He advised Ms. Mitchell to "get estimates, take pictures and send them to him." *Id.* Ms. Mitchell claimed she did "exactly as he said." In asking him to inspect her property himself Mr. Cox responded, "he was busy and would not come." *Id.* Ms. Mitchell hired UGI who advised the heater needed to be replaced. *Id.* Mr. Cox told Ms. Mitchell Allstate would not provide a replacement. *Id.*

⁵⁹ ECF Doc. No. 51.

⁶⁰ ECF Doc. No. 54.

⁶¹ *Id.*

⁶² ECF Doc. No. 58. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

11

Fed. R. Civ. P. 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal quotations omitted). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Id.* at 533-34 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* at 643 (citing *Celotex*, 477 U.S. at 322-23). The heightened standard requires evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (Internal quotation marks and citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a genuine issue of material fact to preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Because Ms. Mitchell is proceeding *pro se*, we will read her "papers liberally and interpret[] them to raise the strongest arguments suggested therein." *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384-85 (W.D. Pa. 2007). "Despite this liberal interpretation, however, a bald assertion, unsupported by evidence, cannot overcome a properly supported motion for summary judgment." *Id.*

[63] ECF Doc. No. 60.

[64] ECF Doc. No. 62.

[65] ECF Doc. No. 63.

[66] ECF Doc. No. 65. Ms. Mitchell moved for summary judgment a third time (ECF Doc. No. 67) and fourth time (ECF Doc. No. 73). Still failing to show an absence of a genuine issue of material fact which would allow her to succeed as a matter of law, we denied Ms. Mitchell's arguments on "Motions" but construed them as response to Allstate's Motion. ECF Doc. No. 69.

[67] *See* ECF Doc. No. 48.

[68] *Dougherty v. Allstate Prop. & Cas. Ins. Co.*, 681 Fed. Appx. 112, 117 (3d Cir. 2017) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)).

[69] *J.C Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)).

[70] *Frantz v. Nationwide Ins. Co.*, No. 18-0509, 2018 WL 4207742, *4 (M.D. Pa., Sept. 4, 2018) (internal quotation marks and citations omitted).

[71] *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006).

[72] *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (citing *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995); *see also UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004) ("the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits").